In the Matter of the Accounting of JAMES L. STONER et al., as Executors of JOHN T. WELSH, Respondents.

JAMES L. STONER et al., Appellants and Respondents; MARY WELSH, Respondent and Appellant; JULIA R. WELSH et al., Respondents.

(Argued October 13, 1936; decided November 24, 1936.)

*William F. Delaney* and *George J. Gillespie* for Mary Welsh, respondent and appellant.

*Bertrand L. Pettigrew, Walter L. Glenney* and *Samuel S. Yantis* for James L. Stoner et al., appellants and respondents.

*William B. Butler* and *Robert Phillips* for Josephine Gerling et al., respondents.

HUBBS, J. John Thomas Welsh, the testator, died October 9, 1929. He left a last will and testament which contained the following clauses:

" *Third.* I hereby give and bequeath to my Trustees hereinafter named, and to the survivor or successors of them, the sum of three hundred and twenty-five thousand dollars ($325,000.00) to be held by them in the following separate trusts and to be by them invested and kept invested as they see fit and to pay the net income from $200,000.00 thereof to my sister, Mary Borgia from $25,000.00 thereof to my friend Josephine Gerling from $50,000.00 thereof to my brother-in-law, Frank L. Weaver from $25,000.00 thereof to my sister-in-law, Eugenia Browning from $25,000.00 thereof to my sister-in-law,

Hortense Legg during the respective terms of the afore-
said persons natural lives, and upon their respective
deaths or in the event of their predeceasing me, to pay
over, deliver and distribute the principal fund held for
each beneficiary hereinbefore named, to such person or
persons, natural or corporate, as he or she, in and by
his or her Last Will and Testament, shall have lawfully
appointed and in the amounts and proportions so by him
or her directed; and in default of such lawful testamentary
appointment, the principal of the trust fund as it shall
then consist, held for each beneficiary hereinbefore
named, shall be transferred, paid over and distributed as
though such beneficiary had died intestate, in accordance
with the then laws of the State of New York, except that
upon the death of my sister Mary Borgia, the principal of
the trust fund herein created by me for her shall be
transferred, paid over and delivered to my friend, James
L. Stoner, or in the event of his predeceasing my said
sister, to such persons as he may appoint by his Last
Will and Testament, or in default thereof, as if he had
died intestate, in accordance with the then laws of the
State of New York."

" *Seventh*. All the rest, residue and remainder of my
estate, including lapsed legacies, if any, shall be divided
among and paid over to the beneficiaries hereinbefore
named, excepting my said wife, or to such persons as
shall constitute at my death, the heirs-at-law of any such
deceased beneficiaries, according to the laws of descent
of real property of the State of New York then in force,
and in the proportion that their individual bequests
bear to the net amount of my residuary estate."

By paragraphs fourth, fifth and sixth of the will he gave
specific legacies to James L. Stoner and Hume L. Brown,
each of whom was named an executor of the will, and to
Frank Maguire. As to each of said legacies, he provided
that in the event the legatee should predecease him the
bequest was to " such persons as he may appoint by his
last will and testament, or in default of such appointment

as if he had died intestate, in accordance with the laws of the State of New York."

Consideration of the fourth, fifth and sixth paragraphs is important only in connection with the construction to be placed upon the seventh paragraph of the will.

This proceeding was instituted by the executors on the accounting for a construction of the will in various particulars. The first question for our consideration is as to whether the sister of the testator, Mary Welsh, described in the will as "Mary Borgia," has power of appointment with respect to the principal of the trust of which she is the life beneficiary. Upon this point, the Surrogate determined that by the language of the paragraph the decedent expressly excepted his sister from those to whom he gave power of appointment. The decision of the surrogate upon this question has been affirmed by the Appellate Division, two justices dissenting for the reason that they were of the opinion that she was given such power of appointment. The first inquiry to be made is as to whether ambiguity exists in the language used. If it be found that there is no ambiguity, the only question is as to whether the courts below have placed upon the language used a proper construction.

The testator has provided with respect to each of the trusts created by the third paragraph of his will that the income thereof is to be paid to the beneficiaries during their natural life and upon the death of the beneficiaries or in the event of the beneficiary predeceasing the testator, he has directed his trustees " to pay over, deliver and distribute the principal fund held for each beneficiary hereinbefore named, to such person or persons, natural or corporate, as he or she, in and by his or her Last Will and Testament, shall have lawfully appointed and in the amounts and proportions so by him or her directed." If this comprised the entire terms of the trust, it would be quite clear that " Mary Borgia," sister of the testator, is given a power of appointment by will,

Following the semicolon in the last quoted clause, the testator further provided " in default of such lawful testamentary appointment " that the principal of the trust fund as it shall then consist, held for each beneficiary hereinbefore named, shall be transferred, paid over and distributed as though such beneficiary had died intestate in accordance with the then laws of the State of New York except that upon the death of " my sister Mary Borgia, the principal of the trust fund herein created by me for her shall be transferred, paid over and delivered to my friend, James L. Stoner, or in the event of his predeceasing my said sister, to such persons as he may appoint by his Last Will and Testament, or in default thereof, as if he had died intestate, in accordance with the then laws of the State of New York."

A reading of this last quoted portion of the paragraph would seem to indicate, if effect be given to the semicolon by which it is separated from the original gift of the trust estates, including that given to " Mary Borgia," that it was the intent of the testator that should any one of the beneficiaries other than the sister fail to make testamentary appointment, the principal of the fund held for each such beneficiary should be paid over to those who would be distributees of the beneficiary had the beneficiary died intestate, and should the sister fail to make lawful, testamentary appointment, the principal of the trust fund created for her should be transferred, paid over and delivered to Stoner, or, in the event of his predeceasing the sister, to such persons as he might appoint, or in default of an appointment by him to those who would be distributees if he died intestate.

The semicolon has not the effect of creating an ambiguity. The portion of the paragraph following the semicolon constitutes a reasonable and workable disposition of the various trust funds should they not be disposed of by will by the respective *cestuis que trustent*. To conclude that the sister is given no power of appointment is to assume that the testator intended to deprive

his closest relative, named as one of the beneficiaries in the trust, of as full power over the principal of the fund as he gave to the others less closely related to him. The learned surrogate has said that to uphold the sister's contention that she is given a power of appointment "requires reading into the language of the exception a provision that in the event of her leaving no will appointing any person to receive the fund, the principal of the trust passes to Stoner."

He overlooked the fact that by the first portion of the paragraph he did unqualifiedly give to her full power of appointment, and that testator prefaced the second portion with the words "and in default of such lawful testamentary appointment." To give to the exception the effect of depriving her of that right is to take away something already granted and to give it to another. The exception is as to what is to be done with the trust fund in the event of non-appointment by the life beneficiary. Thus read, the power of appointment given to the sister and the other beneficiaries is not taken away from the sister alone as decided by the Surrogate.

The second portion of the paragraph gives the principal of each trust, in the event no appointment is made by the life beneficiary, to certain specified persons or classes of persons. In the case of each beneficiary other than "Mary Borgia" such gift of the principal goes to the distributees of the life beneficiary and in the case of "Mary Borgia," if she fails to make an appointment, it goes to Stoner with a power of appointment, or, if he fails to survive the sister without making an appointment, to his distributees.

The paragraph is not ambiguous unless violence be done to the expressed intent of the testator, and is open to no construction other than that a power of appointment is given to the sister.

The learned Surrogate has determined that the use of the word "beneficiaries" in the seventh paragraph of the will refers to the beneficiaries named in the third para-

graph, which has the result of excluding from participation in the residuary estate the legatees named in the fourth, fifth and sixth paragraphs who are not, in such last numbered paragraphs, described as beneficiaries. In this conclusion the Appellate Division has unanimously concurred. There is no error in such construction. There is a distinction between beneficiaries and legatees. The testator has used the word " beneficiaries " with respect to those persons taking the life estate under the trust. He has been careful to provide that in the event any of the beneficiaries named shall not survive him the share of each such deceased beneficiary shall pass to the heirs at law rather than to the next of kin of the beneficiary. We find no ambiguity in the seventh paragraph of the will.

A question has been raised as to whether the testimony of the attorney who drew the will could be legally received in this proceeding for the purpose of assisting the Surrogate in resolving the ambiguity alleged to exist in the wording of the will. Since we have determined that no ambiguity exists in the wording of the will, it is unnecessary to pass upon that question as the only contention is that such testimony would be competent in case of an ambiguity.

The order appealed from should be affirmed so far as it adjudges and construes the rights and shares of the beneficiaries in the residuary estate and reversed in so far as it determines that Mary Welsh has no power of appointment under paragraph third of the will, and the matter should be remitted to the Surrogate for the purpose of a decree in conformity with this opinion.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified in accordance with this opinion and as so modified affirmed, with costs to each party appearing and filing briefs payable out of the estate.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., taking no part.

Judgment accordingly.